**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED MAY 7, 2008

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

No. 134244

ANDREW PAUL OSANTOWSKI,

      Defendant-Appellant.

BEFORE THE ENTIRE BENCH

CORRIGAN, J.

This case poses the question whether a score of 100 points is appropriate for offense variable 20 (OV 20), which addresses terrorism, when a defendant threatens to cause harm using certain substances or devices but his threats, themselves, do not constitute *acts* of terrorism as defined by MCL 750.543b(a). We conclude that scoring 100 points pursuant to MCL 777.49a(1)(a) is inappropriate under these circumstances because that statute plainly requires the offender to have "*committed an act of terrorism by* using or threatening to use" one of the enumerated substances or devices. Accordingly, we reverse in part the judgment of the Court of Appeals and reinstate the Macomb Circuit Court's

judgment of sentence. In all other respects, we deny defendant's application for leave to appeal the Court of Appeals judgment because we are not persuaded that this Court should review the remaining issues presented.

A jury convicted defendant of making a terrorist threat, MCL 750.543m, using a computer to commit a crime, MCL 752.796, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] The convictions stemmed from a series of e-mail or Internet chat room messages that defendant sent in 2004 when he was a high school student in Clinton Township. The messages, which he sent to a 16-year-old girl living in Washington State, included defendant's threats to commit "mass murder" at his school and his assertions that he possessed various firearms and was in the process of building pipe bombs. The girl reported the threats to her father, a law enforcement officer, who alerted the Clinton Township Police Department. A search of defendant's home conducted pursuant to a search warrant uncovered weapons and materials for making pipe bombs, among other items.

Upon sentencing defendant for the convictions, the trial court calculated the recommended minimum sentence range under the sentencing guidelines as 24 to 40 months. It sentenced defendant within this range to 30 months' to 20 years' imprisonment for both the conviction for making a terrorist threat and the

---

[1] Defendant also pleaded guilty to several counts of receiving and concealing stolen firearms, MCL 750.535b.

2

conviction for the use of a computer during a crime. The sentences were to run concurrently with each other and consecutively to the mandatory sentence of two years for felony-firearm.[2] At sentencing, the prosecutor had argued that 100 points should have been scored for OV 20 because defendant had threatened to use an incendiary or explosive device; as a result, defendant's recommended minimum sentence range would have increased to 57 to 95 months. The trial court disagreed, concluding that a score of 100 points was appropriate only if the threats themselves also met the criteria to qualify as *acts* of terrorism. The court found that defendant's threats did not amount to acts of terrorism and that a score of zero points was appropriate for OV 20.

In a published opinion, the Court of Appeals reversed, concluding that defendant's threats to use an incendiary or explosive device required a score of 100 points. The panel remanded the case, directing the trial court to score 100 points for OV 20 and to resentence defendant accordingly.[3] We ordered oral argument to address "whether, under MCL 777.49a, a threat must *itself* constitute an 'act of terrorism,' as defined by MCL 750.543b, in order for 100 points to be assessed under offense variable 20." 480 Mich 961 (2007).

---

[2] The court imposed concurrent 18-month to 10-year prison sentences for defendant's plea-based convictions of receiving and concealing stolen firearms.

[3] *People v Osantowski,* 274 Mich App 593; 736 NW2d 289 (2007).

We review de novo questions of statutory interpretation. *People v Buehler,* 477 Mich 18, 23; 727 NW2d 127 (2007). "[T]he primary goal of statutory construction is to give effect to the Legislature's intent." *People v Stone,* 463 Mich 558, 562; 621 NW2d 702 (2001). "To ascertain that intent, this Court begins with the statute's language. When that language is unambiguous, no further judicial construction is required or permitted, because the Legislature is presumed to have intended the meaning it plainly expressed." *Id.*

MCL 777.49a(1) directs the court to assess points for OV 20 under the following circumstances:

> (a) The offender committed an act of terrorism by using or threatening to use a harmful biological substance, harmful biological device, harmful chemical substance, harmful chemical device, harmful radioactive material, harmful radioactive device, incendiary device, or explosive device ………………………………………… 100 points
>
> (b) The offender committed an act of terrorism without using or threatening to use a harmful biological substance, harmful biological device, harmful chemical substance, harmful chemical device, harmful radioactive material, harmful radioactive device, incendiary device, or explosive device ……………………………….. 50 points
>
> (c) The offender supported an act of terrorism, a terrorist, or a terrorist organization …………….. 25 points
>
> (d) The offender did not commit an act of terrorism or support an act of terrorism, a terrorist, or a terrorist organization ……………………………………… 0 points

Subsection 2(a) of this statute, MCL 777.49a(2)(a), specifies that "act of terrorism" means that term as defined in MCL 750.543b. MCL 750.543b(a), in turn, provides:

> "Act of terrorism" means a willful and deliberate act that is all of the following:
>
> (*i*) An act that would be a violent felony[4] under the laws of this state, whether or not committed in this state.
>
> (*ii*) An act that the person knows or has reason to know is dangerous to human life.
>
> (*iii*) An act that is intended to intimidate or coerce a civilian population or influence or affect the conduct of government or a unit of government through intimidation or coercion.

The prosecution argues that the trial court's interpretation of OV 20 effectively deletes the phrase "threatening to use" from MCL 777.49a(1). It claims that the relevant portions of OV 20 must apply to threats to use the enumerated items without regard to whether those threats also constitute *acts* of terrorism. The prosecution suggests that, to any extent that the statute's language does not clearly yield this result, the statute is inartfully worded. It also asserts that, had the Legislature intended for OV 20 to apply only to convictions for *acts*

---

[4] A "violent felony," for purposes of MCL 750.543b(a)(*i*), is

a felony in which an element is the use, attempted use, or threatened use of physical force against an individual, or the use, attempted use, or threatened use of a harmful biological substance, a harmful biological device, a harmful chemical substance, a harmful chemical device, a harmful radioactive substance, a harmful radioactive device, an explosive device, or an incendiary device. [MCL 750.543b(h).]

5

of terrorism, MCL 750.543f, it would have provided that OV 20 should not be scored for convictions of making terrorist *threats*, such as defendant's, under MCL 750.543m. We disagree.

The plain language of MCL 777.49a establishes that, for a score of 100 or 50 points to be appropriate, the offender must have "*committed an act of terrorism by* using or threatening to use" one of the enumerated substances or devices. MCL 777.49a(1)(a) and (b) (emphasis added). Thus, the use or threatened use must constitute the *means* by which the offender committed an *act* of terrorism. The statute does not state, for instance, that it applies if the offender "committed an act of terrorism by using or threatening to use, *or threatened to use,*" the enumerated items. The statute also specifically provides that, for purposes of scoring OV 20, "act of terrorism" means that term as defined by MCL 750.543b. Under MCL 750.543b, a threat *may* constitute an act of terrorism; acts of terrorism must be violent felonies as defined by MCL 750.543b(h), which specifies that a violent felony is one that includes as an element the "*threatened use* of physical force . . . or the . . . *threatened use* of a harmful biological substance, a harmful biological device, a harmful chemical substance, a harmful chemical device, a harmful radioactive substance, a harmful radioactive device, an explosive device, or an incendiary device." But not all threats are acts of terrorism, even if they qualify as violent felonies. To constitute an act of terrorism, a threat must be a violent felony and *also* must itself be "a willful and deliberate act" that the offender "knows or has reason to know is dangerous to human life" and "that is intended to intimidate

6

or coerce a civilian population or influence or affect the conduct of government or a unit of government through intimidation or coercion." MCL 750.543b(a).

The distinction between bare threats of terrorism and threats that constitute acts of terrorism is also evident from the fact that each is a separately defined offense. Knowing and premeditated *acts* of terrorism are punishable by life in prison under MCL 750.543f ("A person is guilty of terrorism when that person knowingly and with premeditation commits an act of terrorism."). Threats or false reports of terrorism are separately defined as 20-year felonies under MCL 750.543m, which provides in pertinent part:

> (1) A person is guilty of making a terrorist threat or of making a false report of terrorism if the person does either of the following:
>
> (a) Threatens to commit an act of terrorism and communicates the threat to any other person.
>
> (b) Knowingly makes a false report of an act of terrorism and communicates the false report to any other person, knowing the report is false.

Thus, an offender may *threaten* to commit an act of terrorism, MCL 750.543m(1)(a), without *committing* an act of terrorism or being guilty of terrorism, MCL 750.543b(a); MCL 750.543(f)(1).

For these reasons, a score of 100 points for OV 20 is justified only when a defendant's threats also constitute acts of terrorism. MCL 777.49a(1)(a) (stating that a defendant must have "*committed an act of terrorism by* using or threatening to use" one of the enumerated substances or devices). The plain language of the

7

statute requires this result. The prosecution's claim that our interpretation reads the phrase "threatening to use" out of the statute is without merit. Rather, this phrase is necessary to convey the Legislature's intent that *all* acts of terrorism involving the enumerated items must be scored, without regard to whether a particular act of terrorism consisted of actual use of an item or a mere threat to use the item.

Finally, we also find no merit in the prosecution's claim that our interpretation would be correct only if the Legislature had directed trial courts not to score OV 20 *at all* when calculating the guidelines for convictions under MCL 750.543m for merely making terrorist threats or false reports of terrorism. The prosecution asserts that, if only acts of terrorism qualify for scoring, OV 20 would apply only to convictions under MCL 750.543f for such acts. To the contrary, OV 20 meaningfully applies to convictions for threats and false reports under MCL 750.543m in at least two ways. First, the standard of proof applicable to the guidelines scoring process differs from the reasonable doubt standard underlying conviction of an offense. A trial court determines the sentencing variables by reference to the record, using the standard of preponderance of the evidence. *People v Drohan,* 475 Mich 140, 142-143; 715 NW2d 778 (2006). A defendant may plead guilty—perhaps pursuant to a plea deal resulting from an original charge of terrorism—merely to making a terrorist threat, MCL 750.543m, or a jury may find him guilty beyond a reasonable doubt of such a threat. But, if a preponderance of the evidence supports a finding that the defendant's threat *also*

constituted an *act* of terrorism, in the sentencing phase the court may impose a score of 50 or 100 points for OV 20. Second, OV 20 does not address only acts of terrorism. Rather, a defendant may receive 25 points if he "supported an act of terrorism, a terrorist, or a terrorist organization." MCL 777.49a(1)(c). Accordingly, a defendant convicted under MCL 750.543m merely of making a terrorist threat may receive points under OV 20 even if the record does not support a conclusion that he committed an act of terrorism; his threat may qualify as an act of support, justifying a score of 25 points.

Here, defendant was charged with and convicted under MCL 750.543m of making a terrorist threat. The sentencing court concluded that his threats did not themselves constitute acts of terrorism and, therefore, declined to score any points for OV 20. We review for clear error a court's finding of facts at sentencing. *People v Babcock,* 469 Mich 247, 264; 666 NW2d 231 (2003). The record shows that defendant succeeded only in sending electronic messages to a teenager living in another state. The recipient's father, who happened to be a law enforcement officer in Washington, notified Michigan authorities. The prosecution correctly observes that, as a result of this notification, activities at defendant's high school were disrupted. But we cannot agree with the prosecution that these facts require the conclusion that defendant's threats constituted acts of terrorism for purposes of scoring OV 20. We accept the trial court's ruling that defendant did not commit an act of terrorism. Defendant would not "know[] or ha[ve] reason to know" that his e-mail messages to another teenager were *themselves* "dangerous to human

9

life," MCL 750.543b(a)(*ii*). Nor did defendant actually intend his e-mailed threats to another teenager "to intimidate or coerce a civilian population or influence or affect the conduct of government or a unit of government through intimidation or coercion," MCL 750.543b(a)(*iii*). Therefore, the court's decision to score zero points for OV 20 was not clearly erroneous.

For these reasons, we reverse the portion of the Court of Appeals judgment addressing OV 20 and reinstate the trial court's score of zero points for OV 20 and judgment sentencing defendant to 30 months' to 20 years' imprisonment for the crimes of making a terrorist threat and using a computer to commit a crime. We remand this case to the Macomb Circuit Court for further proceedings consistent with this opinion. In all other respects, we deny leave to appeal.

Maura D. Corrigan
Clifford W. Taylor
Michael F. Cavanagh
Stephen J. Markman

Kelly, J., concurred in the result only.

10

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                       No. 134244

ANDREW PAUL OSANTOWSKI,

      Defendant-Appellant.

_____

WEAVER, J. (*dissenting*).

     I dissent from the majority's reversal of the portion of the Court of Appeals judgment that remanded the case to the trial court for resentencing. I would affirm that portion of the judgment for the reasons the Court of Appeals stated in its opinion.

                                               Elizabeth A. Weaver
                                               Robert P. Young, Jr.