*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KRISTI MARIE GESCH,

Defendant-Appellant.

UNPUBLISHED
October 10, 2024
10:04 AM

No. 365756
Wayne Circuit Court
LC No. 18-008908-02-FC

Before: RIORDAN, P.J., and YOUNG and WALLACE, JJ.

PER CURIAM.

After remand by our Court,[1] defendant Kristi Marie Gesch appeals as of right her sentences of 16 to 30 years' imprisonment for assault with intent to murder (AWIM), MCL 750.83; 4 to 10 years' imprisonment for assault with the intent to do great bodily harm less than murder (AWIGBH), MCL 750.84; two to four years' imprisonment each for two counts of assault with a dangerous weapon (felonious assault), MCL 750.82; and 2 years' imprisonment for each of two counts of carrying a firearm in the commission of a felony (felony-firearm), MCL 750.227b. Gesch was resentenced to 16 to 30 years' imprisonment for AWIM. Because the trial court properly assessed offense variable (OV) 6 and OV 14, we affirm.

## I. BACKGROUND

Gesch's convictions arise from the nonfatal shooting of her ex-husband, Joseph Gilbert and his girlfriend, Angela Pratt. The prosecution's theory was that Gesch wanted to kill Gilbert, her ex-husband, and that she plotted with codefendant, William Karl Arand, her current boyfriend, to commit the offense. The prosecution presented evidence that Gilbert was driving with Pratt as a passenger when four bullets were fired into their vehicle, one of which wounded Gilbert in the stomach. The prosecutor argued that Arand was the shooter, but that Gesch encouraged him to commit the offense and took the lead in planning the shooting. The prosecution also presented

---

[1] *People v Gesch*, unpublished per curiam opinion of the Court of Appeals, issued July 15, 2021 (Docket Nos. 348866 and 350056), p 11.

evidence that Gesch assisted Arand by providing him with Gilbert's photograph and contact information, by purchasing disposable cell phones to enable them to communicate with each other, and by possibly supplying the firearm used in the offense. The jury found Gesch guilty of AWIM with respect to Gilbert and assault with intent to do great bodily harm less than murder with respect to Pratt, and also guilty of two counts of felonious assault for the assaults against both Gilbert and Pratt, and guilty of the charged firearm offenses.

Gesch appealed her original convictions and sentences in *People v Gesch*, unpublished per curiam opinion of the Court of Appeals, issued July 15, 2021 (Docket Nos. 348866 and 350056), pp 1-2, asserting there was insufficient evidence to sustain her convictions. We held there was sufficient evidence to sustain Gesch's convictions, but remanded the case for resentencing because OV 13 was incorrectly assessed points and the trial court departed from the sentencing guidelines without providing an adequate reason for the departure and the extent of the departure.

At resentencing, the trial court assessed 50 points for OV 6 finding Gesch had a premeditated intent because she planned the assault in advance. The trial court found Gesch planned the assault, purchased untraceable cell phones for them to communicate, and encouraged Arand, to continue with the plan when he wanted to back out. The trial court also assessed 10 points for OV 14 finding Gesch was the leader of the assault because she got Arand to shoot the victim and encouraged him when he did not want to go through with the plan. Gesch also identified the target for the assault and initiated the plan for the assault. The revised sentencing guidelines for AWIM resulted in a total of 20 points for the prior record variables (PRVs) and 110 total points for the OVs, placing Gesch in the sentencing guidelines range of 135 to 225 of the VI-C grid for Class A offenders. Gesch was sentenced to 16 to 30 years' imprisonment for her AWIM conviction. Gesch's initial sentences for the felony-firearm, AWIGBH, and felonious assault convictions were unchanged. This appeal followed.

## II. ANALYSIS

Gesch argues the trial court erred by improperly assessing 50 points for OV 6 and 10 points for OV 14. We disagree.

## A. STANDARD OF REVIEW

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013), superseded by statute on other grounds as stated by *People v Rodriguez*, 327 Mich App 573, 579 n 3; 935 NW2d 51 (2019). "[T]he clear-error standard requires us to affirm unless we are definitely and firmly convinced the trial court made a mistake . . . ." *People v Ziegler*, 343 Mich App 406, 410; 997 NW2d 493 (2022). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

## B. OV 6

Gesch argues the trial court erred in assessing 50 points for OV 6. "The trial court's factual determinations regarding offense variables must be supported by a preponderance of the

evidence." *People v Muniz*, 343 Mich App 437, 452-453; 997 NW2d 325 (2022). "Offense variables must be scored giving consideration to the sentencing offense alone, unless otherwise provided in the particular variable." *People v McGraw*, 484 Mich 120, 133; 771 NW2d 655 (2009). "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a [presentence investigation report (PSIR)], plea admissions, and testimony presented at a preliminary examination." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). "A trial court determines the sentencing variables by reference to the record, using the standard of preponderance of the evidence." *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008).

OV 6 addresses "the offender's intent to kill or injure another individual." MCL 777.36(1). For OV 6, 50 points are assessed when "[t]he offender had premeditated intent to kill . . . ." MCL 777.36(1)(a). A trial court assesses 25 points for OV 6 when "[t]he offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result." MCL 777.36(1)(b). "The sentencing judge shall score this variable consistent with a jury verdict unless the judge has information that was not presented to the jury." MCL 777.36(2)(a). In addition, OV 6 is scored "by assigning the number of points attributable to the one that has the highest number of points." MCL 777.36(1).

Gesch challenges the trial court's finding that she had premeditated intent warranting an assessment of 50 points for OV 6. In accordance with MCL 777.22(1), OV 6 should be scored when cases involve "homicide, attempted homicide, conspiracy or solicitation to commit a homicide, or *assault with intent to commit murder*." (Emphasis added.) "The elements of assault with intent to commit murder are: (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Brown*, 267 Mich App 141, 147-148; 703 NW2d 230 (2005). Because murder can occur absent premeditation, premeditation is not an element of AWIM. See MCL 750.317 (All murder that is not first-degree murder is second-degree murder), see also MCL 750.316 (First-degree murder is "[m]urder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing.") "Premeditation is not statutorily defined and cannot be evaluated in 'a rigid and mechanical' manner." *People v Walker*, 330 Mich App 378, 383; 948 NW2d 122 (2019), quoting *People v Oros*, 502 Mich 229, 240-241; 917 NW2d 559 (2018). "[P]remeditation may be established by circumstantial evidence tending to show that a defendant had an opportunity to think about, evaluate, or take a 'second look' at their actions." *Walker*, 330 Mich App at 383. "[F]actors that may be considered to establish premeditation include: (1) the previous relationship between the defendant and the victim; (2) the defendant's actions before and after the crime; and (3) the circumstances of the [crime] itself, including the weapon used and the location of the wounds inflicted." *People v Plummer*, 229 Mich App 293, 300; 581 NW2d 753 (1998). "[A] time lapse ranging from one second to one minute" between obtaining a firearm and its use is sufficient to support a finding of premeditation. *People v Tilley*, 405 Mich 38, 45; 273 NW2d 471 (1979).

Although not an element of AWIM, the trial court was permitted to consider premeditation, because by statute, a sentencing court is required to score OV 6 "consistent with a jury verdict unless the judge has information that was not presented to the jury." MCL 777.36(2)(a). At resentencing, the trial court considered all of Gesch's actions.

The prosecution presented ample evidence of premeditation sufficient to support the scoring of 50 points under OV 6. The evidence demonstrated Gesch and Arand planned this assault in advance through a series of incriminating text messages. The trial court found that Gesch encouraged Arand to continue with the plan when he had second thoughts, reminding him in text messages that "[they]'ll never be happy as long as [Gilbert is] still breathing." Gesch purchased cell phones that she believed could not be traced back to her, which they used to communicate before and during the crime. The text messages show that Gesch repeatedly urged Arand to follow through with her plan and even supplied him with Gilbert's address, photo, and a pistol to be used. In considering the previous relationship between Gesch and Gilbert, Gesch's actions and extensive preparation before the commission of the crime, and the circumstances of the crime itself—including deliberately firing four gunshots directly into Gilbert's car after Gesch and Arand stalked Gilbert for days before the shooting (and including Gesch's monitoring of law enforcement's location during the commission of the crime), premeditation has been established.

Although the jury did not make an explicit finding on premeditation, because premeditation is not an element of AWIM, the fact that the jury did not make such a finding does not suggest evidence of premeditation was lacking or that an assessment of points based on a finding of premeditation is inconsistent with the jury's verdict. The trial court properly considered additional facts, adduced in evidence at trial, which demonstrated the assaults were planned by Gesch. Consequently, the trial court properly assessed 50 points for OV 6 because Gesch had time to evaluate, question, and take a second look at her actions. *Hardy*, 494 Mich at 438.

## C. OV 14

Gesch also argues the trial court erred when it assessed 10 points for OV 14. OV 14 seeks to determine the offender's role in the crime. MCL 777.44(1). A trial court assesses 10 points when "[t]he offender was a leader in a multiple offender situation." MCL 777.44(1)(a). When assessing OV 14, "[t]he entire criminal transaction should be considered when scoring this variable." MCL 777.44(2)(a). When defining what constitutes a leader for OV 14, we have stated: "To 'lead' is defined in relevant part as, in general, guiding, preceding, showing the way, directing, or conducting." *People v Rhodes*, 305 Mich App 85, 90; 849 NW2d 417 (2014).

Gesch argues on appeal she was not the leader because Arand, as the principal, was the one who shot the victim and she was only an accessory. This argument lacks merit. Our understanding of the term "leader" is not limited to the one who committed the ultimate act. *Id*. Rather, the focus is on each party's actions. *Id*. In *Rhodes*, this Court reversed the trial court's determination that the defendant was the "leader," simply because the defendant had exclusive possession of a gun during the criminal transaction. *Rhodes* explained, that while a defendant's "exclusive possession of a gun during the criminal transaction is *some* evidence of leadership . . . [t]his fact alone does not support [a] finding by the trial court that defendant issued [the] orders." *Id*.

Here, there is sufficient evidence to show Gesch was the one who initiated and directed the assault. The trial court found the evidence demonstrated that Gesch initiated the plan, picked the target, purchased the cell phones and the weapon used, and encouraged Arand to follow through with the shooting when he wanted to back out of the plan. Gesch researched and informed Arand how to dispose of the cell phones so they could not be traced back to her following the crime. These actions show Gesch was planning and directing the assaults. *Id*. Arand did not know the

victim or what he looked like and only became aware of the victim's identity and location through Gesch providing a photo and Gilbert's home address. Gesch arranged for how she and Arand would communicate during the commission of the crime and monitored law enforcement's whereabouts to ensure completion of the shooting without police intervention or subsequent arrest. The trial court found Gesch to be "manipulative" and in control of the entire criminal enterprise. Therefore, the trial court did not clearly err when it assessed 10 points for OV 14 because Gesch was acting as the leader and spearheaded the assaults. *Hardy*, 494 Mich at 438.

### III. CONCLUSION

Gesch appealed her sentences specifically asserting her sentence for AWIM was in error because the trial court improperly assessed 50 points for OV 6 and 10 points for OV 14. Because the trial court did not clearly err when it assessed OV 6 and OV 14, we affirm.

/s/ Michael J. Riordan
/s/ Adrienne N. Young
/s/ Randy J. Wallace